Good morning. May it please the court, counsel, my name is Mark Weisberg. I represent the petitioner Feliciano Italiano. He's a cement mason. He was working for ten years as a cement mason and for one year with this employer at the time that he was injured. The decisions below, based upon really the arbitrator's decision that he wasn't credible, denied the case, finding there was no accident. But if one looks at the evidence, there's really no connection between this credibility finding, which is a little vague anyway, and the question of accident. Even disregarding the testimony of the petitioner, reading the medical records and the testimony of the three witnesses presented, well, two of the witnesses presented by the respondent, because a third really didn't testify on that issue, one can only find that there was an accident. There is no way on this record that anyone can find that there was not an accident. There's no question that he was at work that day. There was no question that he was working with a handheld grinder, grinding down concrete walls. There was no question that he'd been doing this for days. And there was no question that on that day he went to his employer and told him that he was Is that Kowalski? Excuse me? Is that Kowalski? He went to Kowalski first, yes. And Kowalski acknowledged that he did come to him complaining about the pain that day, correct? He acknowledges, in fact, if you read all of Kowalski's testimony, he flip-flops on a few issues, but at the end of the day, and after you've read his email that he wrote to the operations manager, he's about 99% in agreement with the testimony of the petitioner. He quibbles on the question of whether there was an accident, but it's clear that Mr. Kowalski's definition of accident isn't the same as the commission's definition of that word. He seems to think that if it's traumatic, that's an accident, and if it's repetitive, that's not an accident. Well, that doesn't matter to us. What matters is what happened. There's no question about what happened. What happens when the arbitrator makes it clear that the claimant was not a credible witness? The arbitrator says that, but it's not clear what the arbitrator means by that. It seems clear to me to say he wasn't credible. Okay. He wasn't credible. So what did he say that was not credible? Every single significant piece of testimony from the petitioner is supported by all the other evidence of record. He went to the doctor the next day. Did he tell the doctor I fell in the bathtub at home? No, he told him he got injured at work doing repetitive work as a cement mason. There's nothing here that contradicts. The arbitrator seemed to be persuaded by Mr. Lindblad, the surveillance technician. I think that that's what he was saying was not credible, because Mr. Lindblad testified that he saw him carrying groceries, and he saw him at a garage sale, and all of these things. If you look at this testimony, there's really nothing that Lindblad testifies to that has any bearing on the issue of accident. So even if, you know, let's take a simple example. Let's say, you know, I see a guy slip on a banana peel, and then it turns out this guy's a big liar. He lies all the time. Well, it doesn't mean he didn't slip on the banana peel. All right? In this case, I'm not agreeing that my client is not credible. I found him to be credible. But we don't need to address that issue. I don't need to persuade you of that for you to find that there was an accident here. In fact, to my viewing of this record, there's no other conclusion one can reach. It goes beyond against the manifest weight of the evidence. It's just against the entire record. All right. Did somebody provide a causation opinion? Yes. In fact, that's the other incredible part of this, is there's only one causation opinion. It's from Dr. Rubenstein, and he finds causation. There's nothing rebutting that. So once we've addressed the issue of accident and get to the issue of causation, there's only one conclusion that can be drawn, because there's only one doctor with an opinion on the subject. What do you do with Mr. Lindblad's testimony? You don't need to do anything with it. I guess, ultimately, it could come up as an issue on TTD. If you were looking at whether the restrictions that had been given were appropriate, whether he was capable of doing more than those restrictions, I would submit that Lindblad's testimony doesn't indicate that he was capable of doing more than what he was restricted to. But if one were to conclude that, then one could look at the issue of whether he was entitled to TTD for certain periods. I think you would still find that he is entitled to it, because he had restrictions, he was complying with those restrictions, and no one offered him work within those restrictions. Certainly, the employer could have sent him for an IME to challenge those restrictions, and they neglected to do so. Having someone follow him around with a camera who can say, okay, I saw him lift a bag. Well, what's in the bag? How heavy is the bag? I saw him lift a suitcase. Okay, what's in the suitcase? It's carpal tunnel. The guy's not a paraplegic. He can lift things. He can carry things. He might be in pain. And all this was consistent with his testimony anyway. He said that he did as much as he possibly could to help his family. He's at home. He's injured. But he's going to do as much as he possibly can to be a part of that household. So there's nothing inconsistent here. Yeah, he was still actively trying to do those things that he could do. Could he work as a cement mason? No, of course not. And there's no question that his diagnosis is correct. The surgery that he got was helpful in alleviating those symptoms. It's an absolutely pristine case. There's nothing about his credibility that has any bearing on any of those issues. Well, the respondent offered absolutely no medical evidence. Is that correct? That is correct. And all of the medical evidence that Tishner offered was all consistent with his claims of bilateral carpal tunnel syndrome. Absolutely. In fact, he had an electromyogram which showed it. And he actually had bilateral carpal tunnel surgery. And again, there's no dispute. There's just no dispute. The only dispute is the arbitrator saying, I didn't find him credible. What happens when they do that? What happens when the arbitrator does that? He finds it not credible. Ordinarily, if it had to do with an issue that was, you know, let's say he found him not credible as to his testimony of how the accident happened, I think that would be of interest to us. But the fact that he didn't find him credible with regards to something that happened long after the accident doesn't inform us on the issue of accident. As to accident, there is no dispute. No one is disputing. The Matt Kowalczyk, he admits he saw him working that day. He saw him working every day. He worked closely with this guy every single day. He was always his boss. There's no dispute that he was using this grinding tool. There's no dispute that he was grinding down concrete walls. There's no dispute that he had been doing it for days. And there's no dispute that he went to his employer and said he was in pain. There's no dispute he went to his doctor and gave a history of a work accident leading up to and increasing that pain to the point that he couldn't work. There's no dispute. Well, the question that there's no dispute that he said he was in pain doesn't answer the question of credibility of whether he really was. Let's say that he was lying. Let's say he wasn't in pain. He was working all day with the grinder and he really wasn't in pain. And he went to Matt and he said, Matt, I'm in a lot of pain. I need to see a doctor. Okay. So then what? So then he goes to the doctor and gets diagnosed with carpal tunnel syndrome. Well, how did that happen? We all know carpal tunnel syndrome is painful. So he had painless carpal tunnel syndrome? It doesn't make any sense. There's no logical way to reach that conclusion. Can you fake the outcome of an electromyogram? That cannot be faked. As far as I know, if it can be, no one's told me that. Was there any evidence of him being injured any place other than at work? There's absolutely no evidence of that. There's no intervening accident. There's nothing else in this case. What there is is ten years of working as a cement mason, one year working for this employer and a week of grinding down concrete walls with this grinding tool that I rarely point to dissents. But I point to it in this case for a specific reason. The dissent of Commissioner Sherman is the only real analysis of the facts of the case. It's not just that, hey, she agrees with me, so I like that dissent. It's the way she goes through it, the undisputed facts, one after another, they line up perfectly. How long did he work for this company? He worked for them for one year. And during that time, he was working as a cement mason. He testified that although he did other things other than grinding down the walls, that all of the work that he did was of generally the same exertional level, the same difficulty level. And he admitted that at various times working for them, he started to feel pain. Then there would be a layoff period and the pain would go away and he'd hope that that was gone for good. And then he'd go back and the pain would come back. On this particular day, it reached such a high level that he had to, at that point, go and tell his employer. And that's consistent with the EMG results. That's consistent with the diagnosis of carpal tunnel syndrome. He can't have faked that. If there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you. Counsel, please. May it please the Court, my name is Beth Young and I am counsel for Respondent. Petitioner argues that this is a straightforward case. Petitioner grinded a concrete wall for four hours on the day of the accident. He told his supervisor about shoulder and hand pain and numbness. His supervisor refused to allow him to treat for his claimed injuries. His supervisor refused to let him file an accident report. And he asks, how could the commission find that no accident occurred, which rose out of and in the course of Petitioner's employment with Roush Construction? Well, the answer is, as we've already discussed with counsel, that the commission, like the arbitrator, found Petitioner's testimony lacked credibility when compared with the testimony of Matt Kowalski and Dina Villasenor. Do they opine on what specific issue it lacked credibility on? That there was no accident or that he's just not credible generally speaking? Well, the arbitrator found, and the commission affirmed, specifically, that there was no accident. And he found that due to the fact that he stated, specifically, that Petitioner was not a credible witness. And then he did specifically state that Dina Villasenor and Matt Kowalski and Dan Lindblad, in particular, were the credible witnesses in this trial. But what evidence did they offer to rebut the issue of accident? The only issue, the only thing that they mentioned was that they, essentially, the arbitrator and then the commission affirmed that they just didn't believe Petitioner's testimony. Everybody corroborated what kind of job he did, what he did every day, grinding down the walls, they agreed with all that. Right. There was no contradiction to any of the medical records that he did, in fact, have carpal tunnel syndrome and he had bilateral carpal tunnel surgery. So, I mean, what evidence is there that contradicts the evidence that he was injured on the job? Well, the fact that when Petitioner went to complain of pain in his hands and his shoulders to his supervisor, Matt Kowalski, Matt Kowalski specifically asked him, is this a work-related injury? Did you hurt yourself at work? He said no. And then when Petitioner was asked during his, during cross-examination, did you hurt your, did you tell your supervisor that you hurt yourself at work? He said, I don't know. I mean, you know. He filled out a report, right? Right. That day. And the thing is, is that realistically, you know, counsel is stating that how else could this possibly have occurred? Well, Dan Lindblad, who was the investigator, testified to a great deal of activity that Petitioner was doing outside of his work. Well, and that, that might go to how badly he was injured, but what does that have to do with whether he was injured at all? Well, the thing is, is that, I mean, for example, Dan Lindblad testified to the fact that on one day Petitioner was taking wheels and putting them on his cart and using a wrench to, to screw in the, the, the parts of the, of the wheel. These are things that, I don't know how often he did this. Well, and, and so, you know, the Commission could have said, well, we're not going to pay you TTD because you were at MMI. But how does the activity that he was able to engage in, what does that, how does that rebut the fact that there was an accident to begin with? Well, because the, the Commissioner, the Commission and the arbitrator were basically stating that there are so many, first of all, he's stating that, that he was, he never really reported that an accident happened at work. He said that he was in pain. He never really reported it. He came back the next day and, and asked to fill out a report. Kowalski wouldn't let him fill out an accident report. He gave him what he called an incident report. Right. And he did fill it out and said, I got hurt at work. That was, he said that. But when he was asked initially, why are you, you are telling me you're in pain. And Matt Kowalski specifically said to him, is this due to work? And at that point he said, no. I mean, the next day he came in and he asked to fill out an accident report after he had spoken with his doctor. And, and at that point Matt Kowalski said, I'm not, not letting you fill out an accident report. He's saying, you told me this was not work related. Matt Kowalski, when, when, when he specifically asked Matt, when Matt Kowalski asked him whether or not this was a work related accident, Matt Kowalski then said, because if it is a work related accident, I need to send you to the clinic. And he at that point said, no, it's not a work related accident. And he refused medical treatment. Ms. Beckham, you're not claiming that he didn't have bilateral carpal tunnel syndrome. I'm not claiming that, but I'm not claiming what I'm saying. You're saying he had to have got it someplace else. Yes. And there's no evidence of anyplace else, however, that he would have got the carpal tunnel syndrome. Well, what I'm stating is, is that the testimony of, of Dan Lindblad shows that he was very active outside of work. And so it could have been, he could have done something in his spare time. Maybe he was constantly doing handy work around the house, and that could have possibly occurred. The whole, the whole, the, essentially our argument, and I think what, what the arbitrator and the commissioner are trying to say, is that the petitioner was inconsistent with his testimony. And, and the, and, and for example, I understand counsel's argument with regard to TTD rather than, you know, denying the accident. But at the same time, you know, the thing is, is that he specifically testified to the fact that he could not do anything other than minor chores. He could help somewhat around the house. He could sometimes pick up bags, but he had to put them down shortly thereafter. He testified he was unable to do things with his hands and shoulders until after his, his carpal tunnel surgery, which was in July of 2009. And, and Dan Lindblad specifically testified to a couple of different occasions in which he was very active. He was... But that doesn't go to the question of whether he suffered an injury at work. It goes to the question of credibility. That only goes to the degree of the injury. There's no question in this case, and you have absolutely not a scintilla of evidence, that this man does not suffer from bilateral carpal tunnel syndrome. We don't argue that. The only question left is, it, what was it, did it arise out of in the course of his employment or didn't it? Right. Now, what evidence do you have that it didn't? Because he says it did. Our entire argument is based upon credibility. And the, the basic finding of the commission and of the arbitrator was based upon looking at the testimony of Petitioner and then looking at the testimony of Dino Villasenor and Dan Lindblad and Matt Kowalski, that Petitioner's testimony in and of itself was not credible. So therefore, any testimony... It couldn't have happened then. Ergo, an accident could not have happened. It has to be a conclusion. That's, that's what the court found. Yeah. I, there, I'm not, I'm not claiming that we have any, any evidence other than this surveillance that shows... You don't dispute the fact that he was using a grinder all day, do you? On the 6th? No. And you don't dispute the fact that Rubenstein says that that can certainly cause bilateral carpal tunnel syndrome, do you? You don't dispute that, do you? I think it's interesting that Petitioner saw... Was very interesting that you have no evidence, no medical evidence whatsoever. None. Well, first of all... So this is all uncontradicted, right? Dr. Rubenstein was one of the five doctors that Petitioner saw. The four other doctors that Petitioner saw with regard to this injury didn't have any causal relationship opinion whatsoever. Second of all, Dr. Rubenstein specifically just makes a blatant statement, which is that he, based on his knowledge of repetitive motion activities as a cement finisher, Petitioner's injury was caused by the accident. However... And that's the only causation opinion in the record. Yes. But what do we know of what his specific idea of what the repetitive motion activities of a cement finisher is? We don't know what he was told. We don't know if he knows anything about Petitioner's specific job duties. Well, didn't he say that it involved forceful pushing and pulling? Isn't that what it involved? I believe that was... I think that was Dr. Marquardt who said... No, I think that was Dr. Rubenstein. He wrote in his medical records, it was directly related to the repetitive motion activities of cement finishing, which also involved a significant amount of forceful pushing and pulling. So he gets that part right, doesn't he? I don't know, because Petitioner didn't testify as to what exactly he did as a cement finisher. Did you ask him? It's not my burden to prove exactly what he did. He testified that... He testified to the fact that he used a grinder that was 10 to 12 inches. Yes, and it caused him pain. Yes. And that he went to the employer and he told the employer's representative, you know, I hurt from using the grinder all day. And the guy said, did you have an accident? He didn't have an accident. He asked him if his pain was due to work-related activities, and he said no. If there are no further questions, based upon my arguments today and my arguments in my brief, I pray that this appellate court will affirm the decision of the commission. I have a question. Yes. You say the commission didn't find it credible? Yes. Well, and he said, no, it's not related to my work, so why would we find him credible about testifying? I guess there's lots of credibility issues. Well, no, you're just telling me he's not credible. The commission, well, but who is credible is... Well, and should we believe him when he says it's not related? Well, if he's not credible... So if that's the case, is the commission really supposed to look at the facts and circumstances absent his testimony and come to a reasonable inference? Well, Matt Kowalski testified that he asked him whether or not it was a work-related accident, and he said no. Yeah, and we can't believe... He asked him whether... The arbitrator found Matt Kowalski's testimony to be credible. Yeah, that's right. That's what he could testify and be credible. That is what the claimant said, what didn't happen. But the commission said we can't believe anything the claimant says. I don't know where his interest came from. So why should we believe him? I don't... You know what? I agree with the commission. The commission said that there's nothing about his testimony in general that's credible, including his claim of an accident. Right, so we can't believe him when he says it wasn't related. We also can't believe him when he says that he had an accident. Then maybe they can look at facts and circumstances and come to reasonable inference. While et al. carpal tunnel isn't necessarily always just caused by a job, it can be caused by a number of different things. Well, we're not just allowing recovery because of causation. Isn't it by aggravation, pre-existing conditions, too? What did Kowalski ask him? What did he ask him? At what time? I'm sorry. Well, the only time it makes any difference. If you contend he said no. He said... It would be the day of the injury. Yes. What did Kowalski ask him? Whether or not his pain was due to a work-related accident. No, he asked him whether he had an accident. And then Kowalski testified that his reasoning was an accident has nothing to do with repetitiveness. An accident is an accident. You have to hurt yourself in an accident. You're talking about apples and oranges. Did he have an accident? No, not according to Kowalski, he didn't have an accident. And evidently, according to him, he didn't have one either. The grinder didn't drop on his head. He had repetitive trauma. And Kowalski said, well, that's not an accident. That's what Kowalski asked him. That's what he answered no to. Well, Kowalski also said, if you had an accident that's related to work, then we need to send you to the clinic. Yeah, that's an accident within Kowalski's definition of one, not repetitiveness. He specifically says an accident has nothing to do with repetitiveness. Well, Petitioner also says that he can't remember whether or not he told him that he had any kind of work-related injury or accident. Put yourself in the real world for a second. You come into the house one night and you have a problem with some part of your body, and somebody says, well, you know, did you hurt yourself? Did you have an accident? You're probably going to say no. Because in the claimant's mind, he's thinking about a specific accident, specific instance where something happened. That didn't happen here. Yeah, but the claimant also testified that he started working for Roush Construction in the fall of 2008, and that when he was working for Roush Construction as a concrete finisher, that he experienced a high degree of pain in his shoulders and his hands. And then he testified that during the, he didn't go for any medical treatment during that period of time, and he didn't report any kind of accident. Then he was laid off at the end of the year in 2008, came back to work in April of 2009, and he testified that during that period of time, his injuries, his pain subsided. So obviously he must, if he knew that this was work-related, he should. Counsel, your time is up. Okay. As I said before, I just ask that this panel and the appellate court confirm the decision of the commission. Thank you. Rebuttal. I'll be brief in rebuttal. What Mr. Kowalski says and what he does are two different things. He says that, you know, there was no accident, but then he fills out a Form 45 from the Workers' Compensation Commission. Why? Obviously he knew there was a work accident. In any event, I would ask that you reverse the decision below. Thank you very much. The court will take the matter under advisory for disposition.